# EXHIBIT A





UCS-840(REV 1/2000)

# REQUEST FOR JUDICIAL INTERVENTION

<u>Supreme</u> COURT, <u>New York</u> COUNTY  INDEX NO. <u>07/108209</u>
DATE PURCHASED: <u>6/13/07</u>

| For Clerk Only |
|---|
| IAS entry date |
| Judge Assigned |
| RJI Date |

PLAINTIFF(S):
BETH ISRAEL MEDICAL CENTER

DEFENDANT(S):
1199 (SEIU UNITED HEALTH CARE WORKERS EAST D/B/A LOCAL 1199/ SEIU NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION

Date issue joined: _____ Bill of particulars served (Y/N):  [ ] Yes  [X] No

**NATURE OF JUDICIAL INTERVENTION** (check **ONE** box only **AND** enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of readiness

[ ] Notice of motion (return date:_____)
     Relief sought _____

[ ] Order to show cause
     (clerk enter return date:_____)
     Relief sought_____
[ ] Other ex parte application (specify:
     _____)

[X] Notice of petition (return date: <u>8/17/07</u>)
     Relief sought <u>Vacate Arbitration Award</u>

[ ] Notice of medical or dental malpractice action (specify:_____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify: _____
_____)

**NATURE OF ACTION OR PROCEEDING** (Check **ONE** box only)

**MATRIMONIAL**
[ ] Contested                             -CM
[ ] Uncontested                           -UM

**COMMERCIAL**
[ ] Contract                              -CONT
[ ] Corporate                             -CORP
[ ] Insurance (where insurer is a
    party, except arbitration)            -INS
[ ] UCC (including sales, negotiable
    instruments)                          -UCC
[ ] *Other Commercial                     -OC

**REAL PROPERTY**
[ ] Tax Certiorari                        -TAX
[ ] Foreclosure                           -FOR
[ ] Condemnation                          -COND
[ ] Landlord/Tenant                       -LT
[ ] *Other Real Property                  -ORP

**OTHER MATTERS**
[ ] *_____                           -OTH

Malpractice
[ ] Medical/Podiatric                     -MM
[ ] Dental                                -DM
[ ] *Other Professional                   -OPM

[ ] Motor Vehicle                         -MV
[ ] *Products Liability                   -PL

[ ] Environmental                         -EN
[ ] Asbestos                              -ASB
[ ] Breast Implant                        -BI
[ ] *Other Negligence                     -OTN

[ ] *Other Tort (including
    intentional)                          -OT

**SPECIAL PROCEEDINGS**
[X] Art. 75 (Arbitration)                 -ART75
[ ] Art. 77 (Trusts)                      -ART77
[ ] Art. 78                               -ART78
[ ] Election Law                          -ELEC
[ ] Guardianship (MHL Art. 81)            -GUARD81
[ ] *Other Mental Hygiene                 -MHYG
[ ] *Other Special Proceeding             -OSP

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————

In the Matter of the Arbitration between

BETH ISRAEL MEDICAL CENTER,

                Petitioner,

- and -

1199/SEIU UNITED HEALTH CARE WORKERS EAST, formerly d/b/a LOCAL 1199/SEIU NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION,

                Respondent.

———————————————————————

RECEIVED
LEGAL DEPT.

2007 JUN 27  AM 10: 44

Index No.: 108209/07
Purchased on 6/12/07

NOTICE OF PETITION TO
VACATE ARBITRATION AWARD

      PLEASE TAKE NOTICE that upon the annexed Verified Petition and the exhibits attached thereto, and the supporting Memorandum of Law, Petitioner Beth Israel Medical Center will apply to this Court at the Motion Support Office, Courtroom 130, located at the Supreme Court, 60 Centre Street, New York, New York 10007, on August 17, 2007 at 9:30 a.m., or as soon thereafter as counsel may be heard, for an order pursuant to Rule 7511 of the Civil Practice Law and Rules ("CPLR"), vacating the Opinion and Award of Arbitrator Robert T. Simmelkjaer, dated March 6, 2007, finding that Beth Israel Medical Center violated a collectively bargained for agreement between the parties, and requiring Beth Israel Medical Center to pay certain Registered Nurses at its Kings Highway Division night differential.

PLEASE TAKE FURTHER NOTICE, that pursuant to § 403(b) of the CPLR, answering papers, if any, shall be served so as to be received at least seven (7) days before the return date of this application.

Dated: June 12, 2007
      New York, New York

                EDWARDS ANGELL PALMER & DODGE LLP

                By: _____
                Jason R. Bogni
                Attorneys for Beth Israel Medical Center
                750 Lexington Avenue
                New York, New York 10022
                212.308.4411

To:    1199/SEIU UNITED HEALTH CARE WORKERS EAST
       Respondent
       301 West 43rd Street
       New York, New York 10036
       212.582.1890


2007 JUN 27 AM 10: 44
RECEIVED
LEGAL DEPT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Arbitration between

BETH ISRAEL MEDICAL CENTER,

                Petitioner,

- and -

1199/SEIU UNITED HEALTH CARE WORKERS EAST, formerly d/b/a LOCAL 1199/SEIU NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION,

                Respondent.

Index No.: 108209/07 *Purchased on 6/12/07*

<u>VERIFIED PETITION</u>

      Petitioner, Beth Israel Medical Center ("BIMC" or the "Hospital"), by its attorneys, Edwards Angell Palmer & Dodge LLP, alleges as follows for its verified petition pursuant to Article 75 of the Civil Practice Law and Rules seeking to vacate the arbitration award of Arbitrator Robert T. Simmelkjaer, dated March 6, 2007, that directs BIMC to pay a partial shift differential to Kings Highway Division Registered Nurses employed by the Hospital even though the Arbitrator found that parties' agreement did not provide for such payment.

<u>The Parties</u>

      1.      BIMC is a not-for-profit hospital existing under the laws of the State of New York. The Hospital's principal place of business is 1st Avenue at 16th Street, New York, New York 10003. BIMC is comprised of a number of divisions, including the Petrie Division, which is the main division of the Hospital located at lower First Avenue in Manhattan, and the Kings Highway Division ("Kings Highway"), which was acquired by BIMC in 1994 after it

1

purchased Kings Highway Hospital in Brooklyn, New York. BIMC also maintained the Singer Division on the upper east side of Manhattan until it closed in August 2004.

2. Upon information and belief, 1199/SEIU United Health Workers East, which was formerly known as 1199/SEIU National Health and Human Service Employees Union ("Local 1199" or the "Union") is an unincorporated association that maintains a place of business at 310 West 43rd Street, New York, New York 10036.

3. Upon information and belief, Local 1199 is, and at all times relevant has been, the exclusive bargaining representative for certain registered nurses ("RNs") employed by BIMC.

4. Upon information and belief, since in or about 1980 Local 1199 had been the exclusive bargaining representative for certain nurses employed by the former Kings Highway Hospital.

Background

5. Upon information and belief, in 1988 Local 1199 and Kings Highway Hospital entered into an agreement ("1988 MOA") that created twelve-hour shifts (commonly known as "flex time") for RNs working in the Critical Care Unit ("CCU") and the Intensive Care Unit ("ICU"). (1988 MOA attached as Exhibit 1.)

6. The 1988 MOA provides that, among other things, flex time shifts will be 7:00 a.m. to 7:00 p.m., and 7:00 p.m. to 7:00 a.m., and that payment of a wage supplement for work on the night shift ("night differential") will start at 7:00 p.m. The 1988 MOA also provided that the RNs working flextime shifts would receive a 30-minute paid lunch break and be scheduled to work three 12-hour shifts per week plus one extra shift every sixth week.

7. The 1988 MOA specifies that all Kings Highway Hospital RNs in the CCU and ICU agreed to work a 12-hour flex shift in accordance with the terms of the 1988 MOA.

8. Upon information and belief, in or about December 1989, Local 1199 and Kings Highway Hospital entered into an agreement ("1989 MOA") that modified the flex time provision of the 1988 MOA such that "[t]hose Registered Nurses who work a 12 hour shift (flex time) which includes the hours of 3:00 P.M. to 7:00 P.M. shall be paid the above 10% shift differential for those hours worked between 3:00 P.M. and 7:00 P.M." (1989 MOA attached as Exhibit 2.)

9. Upon information and belief, in or about November 1991, Local 1199 and Kings Highway Hospital entered into an agreement ("1991 MOA") that increased the night shift differential for regular shift RNs and provided in a separate provision for flex time RNs that "[t]hose Registered Nurses who work a 12 hour shift (flex time) which includes the hours 3:00 p.m. to 7:00 p.m. shall be paid shift differential on a pro rated basis for those hours." (1991 MOA attached as Exhibit 3.)

10. In or about August 1994, Kings Highway Hospital was purchased by BIMC and became a division of BIMC.

11. The Petrie Division had instituted flex time shifts prior to the purchase of Kings Highway Hospital that used a different model for scheduling and paying flextime RNs, including (i) night differential only to RN's whose regular hours ended after 7:00 p.m., (ii) an unpaid 30 minute lunch period, and (iii) scheduling 13 shifts of 11.5 hours (exclusive of the

3

unpaid lunch) every 4 weeks. (Agreement regarding twelve hour shifts for RNs at BIMC, dated October 1988, attached as Exhibit 4.)

The Parties Agree To Negotiate A New
Agreement Using Interest Based Problem Solving

12. In or about May 2001, Local 1199 and BIMC (through its representative bargaining agent, The League of Voluntary Hospitals and Homes of New York (the "League")), agreed to conduct bargaining for the renewal of the existing RN Collective Bargaining Agreement ("CBA") through the use of an "Interest Based Problem Solving" process. (Agreement between the League and Local 1199 regarding structure and process for RN negotiations, attached as Exhibit 5.)

13. The Interest Based Problem Solving process involves consensus decision making whereby the parties work together to resolve all issues in order to arrive at a decision that everyone can support. (Relevant portions of Interest-Based Problem Solving training handout attached as Exhibit 6.)

The Parties Negotiate Regarding Night Shift
Differential For RN's At All BIMC Divisions

14. In 2001, BIMC and Local 1199 began bargaining regarding the terms of the RN CBA, which resulted in an agreement regarding RN staffing, dated February 21, 2002 ("2002 Agreement"). (2002 Agreement attached as Exhibit 7.)

15. The 2002 Agreement provided for the creation of flex time shifts in 13 specifically identified BIMC nursing units where flex time shifts had not been used previously: 3 in the Petrie Division, 7 in the Singer Division, and 3 in Kings Highway. The 3 new Kings

4

Highway nursing units to implement flex time were "2 North," "SSU," and "3 East." (Exhibit 7, p. 5.)

16. The 2002 Agreement expressly provided that the flex time shifts in the three new units at Kings Highway shall (i) have an unpaid lunch period, and (ii) be scheduled for 13 shifts of 11.5 hours every four weeks. These provisions follow the model for flextime shifts that were in place at the Petrie Division prior to the Kings Highway Hospital merger. (Exhibit 7, p. 5.)

17. The 2002 Agreement does not contain a provision regarding the payment of night differential for any of the new flex time shifts at the Kings Highway Division (or any other division).

18. The 2002 Agreement provides in paragraph "5" that if "the solutions set forth [in the agreement] do not enable the parties to reach their goals, or if a new problem pertaining to the issue statement is identified that requires resolution, the parties shall meet and develop a new solution to the problem using the Interest Based process. Either party may raise issues relative to the solutions agreed upon herein at any time during the term of this agreement." (Exhibit 7, p. 9.)

19. Paragraph "5" of the 2002 Agreement also provides that "absent a mutually agreeable resolution neither party is required to agree to, nor shall an arbitrator have the authority to order, a modification of the provisions of this Agreement." (Exhibit 7, p. 9.)

20. The 2002 Agreement is part of the CBA between the parties, which expires on April 20, 2011. (Opinion and Award, dated March 6, 2007, attached as Exhibit 8 at p. 2.)

The Union's Grievance Seeking Payment Of
Night Differential To The Kings Highway 2
<u>North, SSU, and 3 East Nursing Units</u>

21. In July 2005, BIMC notified 1199 that it discovered it had erroneously been paying night shift differential to RNs working the 7:00 a.m. to 7:00 p.m. flex time shift in the three new flextime units in the Kings Highway Division: 2 North, SSU, and 3 East units. On August 7, 2005, BIMC stopped paying the night differential to the RNs in these three units. (Letter from Suardy to Amsterdam, dated July 26, 2005, attached as Exhibit 9.)

22. The Union filed a grievance to contest the Hospital's discontinuance of night differential to RNs in the 2 North, SSU, and 3 East units, and the Hospital's manager of Human Resources denied the grievance by decision dated September 27, 2005. (Decision by Ognibene regarding night shift differential at Kings Highway, dated September 27, 2005, attached as Exhibit 10.)

23. The Union subsequently filed a Demand for Arbitration with the American Arbitration Association seeking to challenge the Hospital's discontinuance of night differential to RNs at Kings Highway, and Arbitrator Robert T. Simmelkjaer held hearings on the issue on April 7, 2006 and December 13, 2006. (Exhibit 8.)

<u>The Arbitrator's Award</u>

24. The Arbitrator issued an Opinion And Award dated March 6, 2007 ("Award"). (Exhibit 8.) Upon information and belief, the Award was mailed to the parties on or about March 9, 2007. (Letter from American Arbitration Association to parties, Dated March 9, 2007, attached as Exhibit 11.) The Award was received in the Petrie Division's office of Labor

Relations, a division of the BIMC Human Resources Department on or about March 22, 2007. (Exhibit 8, p. 1; Exhibit 11.)

25. The Arbitrator found that language regarding a "night shift differential is omitted from the 2002 Agreement" and characterized this omission as "compelling evidence." (Award, p. 18)

26. The Arbitrator also found that "there was no meeting of the minds" between the parties on the issue of payment of night shift differential to the RN's in the Kings Highway 2 North, SSU, and 3 East units. (Award, p. 18.)

27. Based on this finding, the Arbitrator was required to uphold the denial of the Union's grievance.

28. Despite these findings, the Arbitrator made the irrational finding that the 2002 Agreement provided for payment of night differential to RN's in the Kings Highway 2 North, SSU, and 3 East units.

29. The Arbitrator made this irrational finding by looking outside of the four corners of the 2002 Agreement, and using the 1989 MOU and 1991 MOU to create a new term in the 2002 Agreement.

30. In his award, the Arbitrator stated that "the parties participated in an Interest-Based problem solving process designed to achieve consensus solutions to the problems[.]" (Award, p. 15.)

31. Once the Arbitrator determined that the parties had failed to reach a meeting of the minds on the payment of night shift differential in the three new flextime units in the Kings Highway Division, the Arbitrator was required to enforce the express language of

paragraph "5" of the 2002 agreement that requires that "the parties shall meet and develop a new solution to the problem using the Interest-Based process" when a solution "once implemented" does not enable the parties to reach their goals or "if a new problem pertaining to the issue statement is identified that requires resolution." (Exhibit 7, p. 9.)

32. The Arbitrator exceeded the scope of his authority and jurisdiction by imposing a term that the parties omitted, rather than following the unambiguous terms of the 2002 Agreement that require the parties to continue negotiations to achieve a consensus with respect to the agreement's flextime provisions.

33. Relying on his irrational findings, the Arbitrator came to the equally irrational conclusion that BIMC "violated the collective bargaining agreement when it ceased to pay night differential to Registered Nurses at the Kings Highway Division who worked the 7:00 a.m. to 7:00 p.m. flex schedule." (Award, p. 21.)

34. Based on his irrational findings, the Arbitrator exceeded his authority under the CBA by rewriting the parties' contract to add a provision requiring payment of night differential to RN's at Kings Highway where none exists.

35. Arbitrator Simmelkjaer's Award also violates public policy because it orders enforcement of an agreement that he found does not exist and that cannot be performed within one year. Such an agreement, even if it exists, violates New York's Statute of Frauds. It is undisputed that the agreement found by the Arbitrator is not in writing and it also is undisputed that the length of the alleged agreement is from February 2002 to the expiration of the CBA in April 2011 - more than one year. Accordingly, the agreement to pay night shift differential to Kings Highway RN's found by the Arbitrator violates the Statute of Frauds and is unenforceable.

8

36.   The Arbitrator's Award directing the Hospital to pay night differential to the RN's in the Kings Highway 2 North, SSU, and 3 East units is irrational, exceeds the scope of his authority under the CBA and contravenes public policy.

WHEREFORE, Petitioner Beth Israel Medical Center requests that an order be entered pursuant to CPLR 7511 vacating the Award in its entirety and for such other and further relief as the Court deems just and proper.

Dated: June 12, 2007
      New York, New York

EDWARDS ANGELL PALMER & DODGE LLP

By: _____
Jason Bogni
Attorneys for Beth Israel Medical Center
750 Lexington Avenue
New York, New York 10022
212.308.4411

9

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

Carmen Suardy, being duly sworn, deposes and says:

That she is employed as the Assistant Vice President of Labor Relations for Petitioner Beth Israel Medical Center ("BIMC"); that she has read the foregoing Verified Petition and knows the contents thereof; that the contents are true to the best of her knowledge, information and belief and that the basis for her knowledge, information and belief is her personal knowledge, information supplied by other employees of BIMC, and information contained in documents in the files of BIMC.

_____
Carmen Suardy

Sworn to before me this 11th
day of June 2007

_____
Notary Public

JILL E. CLAYTON
Notary Public, State Of New York
No. 02CL5056307
Qualified In Kings County
Commission Expires March 4, 2010

# EXHIBIT 1

1988



KINGS HIGHWAY HOSPITAL CENTER, INC.
3201 KINGS HIGHWAY
BROOKLYN, N. Y. 11234

718-252-3000

SUPPLEMENTAL AGREEMENT BETWEEN LEAGUE OF REGISTERED NURSES, DISTRICT 1199 and the KINGS HIGHWAY HOSPITAL MEDICAL CENTER.

The Union and the Hospital wish to jointly explore alternative scheduling arrangements and have agreed to the introduction of a Pilot Program in which <u>all</u> Registered Nurses in the C.C.U. and I.C.U. have agreed to the following program. If at the end of the program either nurses or the hospital does not wish to continue with 12 hour shifts, 8 hour shifts will be reinstated for all the nurses involved. Staffing will continue as it did before the trial project.

If the plan is to be ended a 30 day notice is to be given by either side.

It is therefore agreed between the Union and the Hospital as follows:

1) The Pilot Program shall be implemented effective <u>May 29, 1988</u> and shall continue for a period of six months. At the end of six months, if the Hospital and the Registered Nurses agree, <u>12 hour shifts will be considered the permanent staffing pattern for the units involved unless changed by further contractual agreement.</u>

-1-



KINGS HIGHWAY HOSPITAL CENTER, INC.
3201 KINGS HIGHWAY
BROOKLYN, N. Y. 11234

718-252-3000

(2) The work week will consist of three 12 hours tours of duty. No nurse shall be scheduled to work more than two (2) consecutive days in a row, except when mutually agreed.

(3) Shifts will be 7:00 A.M. to 7:00 P.M. and 7:00 P.M. to 7:00 A.M. Night differential will start at 7:00 P.M.

(4) Shifts will include one ½ hour meal break and three (3) fifteen (15) minute coffee breaks (1 break in A.M. and 2 breaks in P.M.). Afternoon breaks may be taken together in the dining room.

(5) Accrued leave and other benefits measured by time shall be computed on an hourly basis. Any time accrued prior to participation in the Pilot Program shall be converted into 12 hour days. Uniform allowance will be pro-rated into hours.

(6) In charge pay will be adjusted to 1½ times the present rate for a 12 hour shift.

(7) Each nurse will work no more than three (3) week-end days a month.

(8) Nurses will work a 36 hour week and will work one (1) extra shift in each sixth (6) week schedule.



KINGS HIGHWAY HOSPITAL CENTER, INC.
3201 KINGS HIGHWAY
BROOKLYN, N. Y. 11234

718-252-3000

(9) All provisions of the collective bargaining agreement between the parties covering the Registered Nurses bargaining unit shall apply to employees participation in the Pilot Program except as expressly provided in this agreement.

Hospital _____     1199 _____
        Signature                      Signature

Hospital _____     1199 _____
        Signature                      Signature

-3-