Barry J. Peek (BJP 3268)
Jordan Rossen (JR 6176)
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 Broadway, Suite 501
New York, New York  10018
212-239-4999

Attorneys for the Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BETH ISRAEL MEDICAL CENTER,

                          Plaintiff,                    07 CIV 6254 (MGC)
                                                        ECF Case

               v.

1199/S.E.I.U. UNITED HEALTHCARE WORKERS
EAST D/B/A LOCAL 1199/S.E.I.U. NATIONAL
HEALTH AND HUMAN SERVICE EMPLOYEES
UNION

                          Defendant.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF
UNION'S RULE 12(c) MOTION FOR JUDGMENT
CONFIRMING ARBITRATION AWARD AND DISMISSING
<u>EMPLOYER'S PETITION TO VACATE AWARD</u>**

# TABLE OF CONTENTS

**Page(s)**

*I. PRELIMINARY STATEMENT OF FACTS AND PROCEEDINGS........ 1-3*

*II. ARGUMENT ....................................................................................... 3-14*

   *A. MOTION FOR JUDGMENT UNDER RULE 12(c) OR OTHER*
     *SUMMARY DISPOSITION IS PARTICULARLY APPROPRIATE*
     *IN AN ACTION TO CONFIRM A LABOR ARBITRATION*
     *AWARD ....................................................................................... 3-7*

   *B. THE AWARD MUST BE CONFIRMED BECAUSE THE*
     *ARBITRATOR ACTED WITHIN THE SCOPE OF HIS*
     *AUTHORITY AND THE AWARD IS BASED UPON BINDING*
     *COLLECTIVE BARGAINING AGREEMENTS............................ 7-14*

*III. CONCLUSION AND REQUESTED RELIEF ..................................14, 15*

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Application of National Association of Broadcast Employees and Technicians v. National Broadcasting Company*, 707 F. Supp. 124 (S.D.N.Y. 1988) ...................................................................12

*Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F. 3d 255 (2d Cir. 2003) ...............................................................12

*Beth Israel Medical Center v. Local 814, Teamsters*, attached after page 15, ___F.Supp.2d ___, 2000 U.S. Dist. LEXIS 13547 (S.D.N.Y. 2000)...4, 6, 13, 14

*Burns Int'l Sec. Servs., Inc. v. International Union, United Plant Guard Workers*, 47 F.3d 14 (2d Cir. 1995).......................................................9

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ...............................................................4

*Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52 (2d Cir. 2001) ....................................................................11

*D. H. Blair & Co/. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ....................................................................11

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2d Cir. 2003) ..................................................................11

*Eastern Associated Coal Corp. v. United Mine Workers, Dist. 17*, 531 U.S. 57 (2000)....................................................................4, 5, 10

*Fromm v. Ing Funds Distributors, LLC*, 486 F. Supp. 2d 348, 2007 U.S. Dist. LEXIS 38310 (S.D.N.Y. 2007)..............11

*Hakala v. Deutsch Bank AG*, ___F.Supp. 2d ___, 2004 U.S. Dist. LEXIS 8297 (S.D.N.Y. 2004) ...................4

*Hill v. Staten Island Zoological Soc'y, Inc.*, 147 F.3d 209 (2d Cir. 1998) ..................................................................10

**PAGE(S)**

*Hygrade Operators, Inc. v. Local 333, United Marine Division*,
  945 F.2d 18 (2d Cir. 1991) ...................................................................9

<u>*Lipin v. National Union Fire Insurance Co., et al*</u>,
  202 F.Supp.2d 126 (S.D.N.Y.) 2002 ....................................................4

*Local Union. No. 38, Sheet Metal Workers' Int'l Ass'n v. Hollywood
  Heating & Cooling, Inc.*,
  88 F. Supp. 2d 246 (S.D.N.Y. 2000), affirmed without published opinion,
  242 F.3d 366 (2d Cir. 2001) .........................................................10, 11

*Major League Baseball Players Ass'n v. Garvey*,
  532 U.S. 504 (2001) (<u>per</u> <u>curiam</u>)....................................................4, 5

*Matter of Arbitration between Local 1199, SEIU and Beth Israel Medical
  Center, Kings Highway,* AAA No. 13-300-01422-00 (Adelman Opinion
  and Award, June 2001) .......................................................2, 3, 13, 14

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*,
  808 F.2d 930 (2d Cir. 1986) ...............................................................12

*Millicom International V.N.V. v. Motorola, Inc.*,
  ___ F. Supp. 2d ___, 2002 U.S. Dist. LEXIS 5131 (S.D.N.Y. 2002)...................5

*Mitchell Plastics, Inc. v. Glass Workers Int'l Union*,
  946 F. Supp. 401 (W.D. Pa. 1996) ........................................................4

*Richardson v. American Arbitration Association*,
  ___ F. Supp. 2d ___, 1999 U.S. Dist. LEXIS 221 (S.D.N.Y. 1994) ....................2

*Roe v. Johnson,*
  334 F.Supp.2d 415 (S.D.N.Y. 2004) ......................................................4

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) ..................................................................4

*United Paperworkers Int'l Union v. Misco, Inc.*,
  484 U.S. 29 (1987)..........................................................................5, 10

**PAGE(S)**

*United Steelworkers v. Enterprise Wheel & Car Corp.*,
   363 U.S. 593 (1960)........................................................................................5, 10

*Wackenhut Corp. v. Amalgamated Local 515*,
   126 F.3d 29 (2d Cir. 1997) ...................................................................9

*Wallace v. Buttar,* 378 F.3d 182 (2d Cir. 2004) .....................................................11

## STATUTES AND RULE

   Federal Arbitration Act, 9 U.S. 1, et seq. .......................................................11

   Labor Management Relations Act,
   29 U.S. Code Sections 173(d) and 185. .................................................1, 2, 6

   New York Statute of Frauds. ...........................................................................6

   Rules 12(c) and 56(c), FRCP....................................................................1, 3, 4

**MEMORANDUM OF LAW IN SUPPORT OF
UNION'S RULE 12(c) MOTION FOR JUDGMENT
CONFIRMING ARBITRATION AWARD AND DISMISSING
EMPLOYER'S  PETITION TO VACATE AWARD**

## I.     PRELIMINARY STATEMENT OF FACTS AND PROCEEDINGS

Plaintiff Beth Israel Medical Center ("Petitioner" or "BIMC") sues to vacate the 21 page March 6, 2007 Arbitration Opinion and Award of Robert T. Simmelkjaer, which held that Registered Nurses (RNs) at the King's Highway Division must contractually continue to receive shift differential pay for flex-time shifts, which include the hours of 3:00 PM to 7:00 PM  (Petition, Exhibit 8, p. 3 and "Union's Position" on grievance, Petition Exh. 10).  Defendant Union has counter-claimed to confirm the Opinion and Award.

The facts and proceedings are stated in the Arbitration Opinion and Award (Petition Exh. 8).  The Arbitrator considered all binding contracts and clearly based his Opinion and Award on the contracts affecting Kings Highway RNs.  The Union's grievance and request for arbitration referenced and attached relevant contracts (ibid, paras 1 through 15).

Defendant ("Local 1199" or "Union") and Petitioner are parties to collective bargaining agreements in an industry affecting commerce within Section 301(a) of the Labor Management Relations Act, 29 U.S. Code, Section 185 (Notice of

Removal, paras. 1-3, Petition to Vacate, para. 1-4).[1]  The Union's Removal Papers attach as Exhibit A, BIMC's State Court Petition and its Exhibits 1 through 11.

The parties sought to resolve their differences by an American Arbitration Association selected Arbitrator as provided in an industry – Local 1199 Agreement (Pet. Exh. 8, p. 2).  Two hearings were held; testimony was taken; there were 18 Exhibits introduced; the parties each filed a post-hearing brief and a reply brief (Union Exhibits B, C, D, and E; Pet. Exh. 8, p. 2).

The Arbitrator considered the Agreements affecting Kings Highway Registered Nurses ("RN"s) of 1988, 1989, 1991, 2001 and 2002 (Petition Exhs. 1-3, 5, 6, and 7).  The Arbitrator also noted an arbitration opinion, which held that BIMC could not unilaterally end lunch pay for Kings Highway employees (Adelman arbitration; Union Exhibit F; Petition Exh. 8, para. 10).

The RNs at Kings Highway, who were on 7:00 AM – 7:00 PM flex time as of the 2002 agreements, were paid contractual shift differential amounts for 3:00 PM to 7:00 PM work.  Kings Highway flex-shift RNs had received such shift pay from 1989 to August 2005, when BIMC unilaterally ceased paying the flex shift employees added in 2002, claiming they had been paid in "error" (Petition Exh. 8, para 15).

---

[1] 29 U.S. Code Section 185 permitted the Union to remove BIMC's New York State suit to this Court. Richardson v. American Arbitration Association, ___F. Supp. 2d ___, 1999 U.S. Dist. LEXIS 221 (S.D.N.Y. 1994).

This pay was not eliminated in the 2002 agreement. Contrary to BIMC's position, the Union had no reason nor duty to raise the issue in view of binding contractual provisions and practice from 1989 to 2002, especially since BIMC promptly paid the new flex-shift employees the shift differential in 2002 and continued it for almost three more years. (ibid).

In contrast, the paid lunch break at Kings Highway was discussed and expressly eliminated in 2002 (Petition, Exhibit 8, p. 16; Adelman Award, Union Exhibit F).

The Arbitrator upheld the shift differential pay as contractually provided to Kings Highway flex-shift employees and not changed or discussed in the 2002 Supplemental Agreement or negotiations. BIMC unsuccessfully argued to the Arbitrator that though the Union and BIMC did not bargain to discontinue paying the four-hour shift differential to flex-shift employees at Kings Highway, it should be implied that they lost the Kings Highway shift differential.

## II.    **ARGUMENT**

### A.    **MOTION FOR JUDGMENT UNDER RULE 12(c) OR OTHER SUMMARY DISPOSITION IS PARTICULARLY APPROPRIATE TO CONFIRM A LABOR ARBITRATION AWARD**

In deciding a motion under Rule 12(c), this Court may consider the pleadings and documents noted, attached to or referred to in the Petition or in

BIMC's possession, including those subject to judicial notice, such as arbitration or court rulings. This results in a summary disposition, but it does not require Rule 56 treatment. Roe v. Johnson, 334 F.Supp.2d 415, 419, 420 (S.D.N.Y. 2004); Lipin v. National Union Fire Insurance Co., et al, 202 F.Supp.2d 126, 135 (S.D.N.Y.) 2002; Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) and Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)

Summary judgment must be entered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c). In actions to confirm labor arbitration awards, the material facts, including the award's contents, are generally not disputed. Accordingly, such cases are particularly "well –suited for summary judgment," Mitchell Plastics, Inc. v. Glass Workers Int'l Union, 946 F. Supp. 401, 402 (W.D. Pa. 1996) or a motion to confirm. BIMC v. Teamsters Local 814, ___F.Supp.2d ___, 2000 U.S. Dist. LEXIS 13547 (S.D.N.Y. 2000), at *1, *2.

The suitability of confirming labor arbitration awards by motion is also enhanced by the very narrowly limited scope of judicial review. Hakala v. Deutsch Bank AG, ___F.Supp. 2d ___, 2004 U.S. Dist. LEXIS 8297 (S.D.N.Y. 2004) at *4. See also: Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam) and Eastern Associated Coal Corp. v. United Mine Workers, Dist. 17, 531 U.S. 57, 62 (2000) ("courts will set aside the arbitrator's

interpretation of what the agreement means only in rare instances"). A labor arbitration award must be confirmed so long as it "draw[s] its essence from the collective bargaining agreement." See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). See also Millicom International V.N.V. v. Motorola, Inc., ___ F. Supp. 2d ___, 2002 U.S. Dist. LEXIS 5131 (S.D.N.Y. 2002) at *15 (The showing required to avoid summary confirmation of an arbitration award is high). The Court granted respondent's motion to confirm the award, at *27.

Courts rigorously apply this extremely limited standard of review. As the Supreme Court has explained:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept . . . . [A] court should not reject an award on the ground that the arbitrator misread the contract . . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987) (emphasis supplied); see also: Garvey, 532 U.S. at 509 and Mine Workers, 531 U.S. at 61-62.

5

This exceptionally high degree of deference is compelled by the central role arbitration plays under federal labor law in resolving disputes arising under collective agreements. In particular, the LMRA declares that federal labor policy favors "[f]inal adjustment [of disputes arising under collective bargaining agreements] by a method agreed upon by the parties." See 29 U.S.C. §173(d); and Enterprise Wheel, 363 U.S. at 596 ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements.").

In its Petition, BIMC raises two issues, the Award was contrary to New York's Statute of Frauds (Petition, para. 35) and it was beyond the Arbitrator's authority. BIMC did not raise the Statute of Frauds point in its arbitration post-hearing briefs. This was probably because the arbitrator relied on written contracts. As BIMC is aware, this Court held that "[T]he Statute of Frauds is not applicable to collective bargaining agreements", Beth Israel Medical Center v. Local 814, Teamsters, ___F.Supp.2d ___, 2000 U.S. Dist. LEXIS 13547 (S.D.N.Y. 2000), at *19 (citations omitted). This Court granted the motion to confirm the award in favor of Teamsters Local 814 on facts almost identical to those in the instant case.

Moreover, the Arbitrator in the instant case relied upon existing written agreements concerning Kings Highway flex-shift employees and the failure of the

2002 agreement to change the right of Kings Highway employees to shift differential pay. The 2002 Agreement placed new flex-shift employees under the Kings Highway Agreements. BIMC's Statute of Frauds point fails.

B.    **THE AWARD MUST BE CONFIRMED BECAUSE THE ARBITRATOR ACTED WITHIN THE SCOPE OF HIS AUTHORITY AND THE AWARD IS BASED UPON BINDING COLLECTIVE <u>BARGAINING AGREEMENTS</u>**

The Arbitrator clearly acted within the scope of his authority. BIMC does not dispute that the Union submitted its grievance for arbitration pursuant to procedures set forth in the Agreements. The parties agreed upon an Arbitrator. The Arbitrator correctly identified the issues between the parties. The 21 page Opinion and Award shows that the Arbitrator decided only the grievance before him pursuant to authority the parties conferred upon him (See Petition Exh. 8).

The Arbitrator repeated the Union's position in part:

> Absent contract language to the contrary, the Union argues that the 1988, 1989 and 1991 MOAs should suffice in terms of express, unambiguous contract language, thus obviating the need for any parol or extrinsic evidence. (Petition Exh. 8, at. p. 8)

> Whereas the parties agreed to change the flex schedule at the Kings Highway Division to include a thirty (30) minute unpaid lunch to accommodate the Adelman Award, which sustained a grievance upholding a thirty (30) minute paid lunch, the parties made no

changes to the method in which the shift differential was to be paid. (at p. 9).

The Arbitrator stated in part:

### DISCUSSION

The contractual history prior to the merger of Beth Israel Medical Center and Kings Highway Hospital is clear. Beginning with a 1988 MOA, which provided that the 12 hour flex shifts would run from 7:00 a.m. to 7:00 p.m. and 7:00 p.m. to 7:00 a.m. and the night differential would begin at 7:00 p.m. and continuing with a 1989 MOA, which provided that the 10% night shift differential would also be paid for the hours between 3:00 p.m. and 7:00 p.m., nurses at Kings Highway Hospital received the benefit. Thereafter, Section 8 of the 1991 MOA changed the method of paying the night shift differential to a "pro-rata basis for those hours". Other than this adjustment in the method of calculation, the record establishes that the nurses who worked a 12 hour flex shift and who were assigned to the CCU, ICU and ED received the night shift differential for an uninterrupted period of six year (1988-1994). (at pp. 14, 15).

Moreover, following the 1994 merger of Beth Israel Kings Highway Hospital, no changes were made in the flex schedule or the pro-rata night differential as per the 1991 MOA for hours worked between 3:00 p.m. and 7:00 p.m. Thus, the payment of night shift differential for those hours continued unabated until October 2002. (at pp. 14, 15).

Considering the evidence in its entirety, the Arbitrator is persuaded that the Employer violated the collective bargaining agreement when it ceased to pay night differential to Registered Nurses at the Kings Highway Division who worked the 7:00 a.m. to 7:00 p.m. flex schedule. (at p. 17).

The Arbitrator finds that the express contract language is clear and unambiguous regarding the entitlement of nurses, who worked the 12 hour flex schedule at the Kings Highway Division/Hospital from 7:00 a.m. to 7:00 p.m., to night shift differential for the 3:00 p.m. to 7:00 p.m. period. The night shift differential benefit had been clearly set forth in MOAs negotiated between Local 1199 and Kings Highway Hospital since 1989 and assumed by Beth Israel upon the merger with Kings Highway Hospital in 1994. (at p. 17).

The Award is entirely based upon the Agreements. For an arbitration award to draw its essence from the parties' agreement, "the arbitrator need only explicate his reasoning" in terms that offer "a barely colorable justification" under the contract. See Hygrade Operators, Inc. v. Local 333, United Marine Division, 945 F.2d 18, 22 (2d Cir. 1991); Wackenhut Corp. v. Amalgamated Local 515, 126 F.3d 29, 31 (2d Cir. 1997); and Burns Int'l Sec. Servs., Inc. v. International Union, United Plant Guard Workers, 47. F.3d 14, 17 (2d Cir. 1995).

Here, the Arbitrator was certainly "construing or applying the contract." Indeed, the thorough Opinion and Award makes plain that the Award is firmly

rooted in the Agreements, which provide for shift differential pay for flex-shift employees at Kings Highway Division and the failure of the 2002 process and Supplemental Agreement to negate such pay (Petition, Exh. 8, pp. 3-8, 13-18, 20, 21, especially paras. 2), 3), 4), 5), 8), 9), 12), 13)). It is BIMC who argues that the Arbitrator should have invented limiting language on pay for four hours of flex shift time.

Even if the Court vehemently disagrees with the Arbitrator's construction of the Agreements, the Court must nonetheless confirm the Award. See: Garvey, 532 U.S. at 509-10; Mine Workers, 531 U.S. at 62; Misco, 484 U.S. at 36, 38; Enterprise Wheel, 363 U.S. at 599; Hill v. Staten Island Zoological Soc'y, Inc., 147 F.3d 209, 213 (2d Cir. 1998) (whether a court "would have come to the same conclusion is not determinative, or even particularly significant"); Wackenhut, 126 F.3d at 32.

Even if the Court believes that the Arbitrator may have erred, the Award must be confirmed because he acted within his authority and the Award draws its essence from the Agreements. See Misco, supra, 484 U.S. at 38 ("Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."); Local Union. No. 38, Sheet Metal Workers' Int'l Ass'n v. Hollywood Heating & Cooling, Inc., 88 F. Supp. 2d 246,

254 (S.D.N.Y. 2000), affirmed without published opinion, 242 F.3d 366 (2d Cir. 2001). See also <u>Wallace v. Buttar</u>, 378 F.3d 182, 189 (2d Cir. 2004).

"[T]he award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." <u>Fromm v. Ing Funds Distributors, LLC,</u> 486 F. Supp. 2d 348, ____, 2007 U.S. Dist. LEXIS 38310 (S.D.N.Y. 2007), at p. *4, quoting <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006). In this case the Award that the Kings Highway employees must continue to be paid their shift differential pay is so clear that no inference is needed.

Courts have identified extreme circumstances in which they will not enforce arbitration awards such as when the award violates public policy. BIMC has not alleged, nor could it prove, that the Award violates public policy. Kings Highway Hospital since 1989 and BIMC since 1994 would not have paid the flex-shift RNs differential pay if it had violated public policy.

Courts also decline to enforce arbitration awards reflecting a manifest disregard of law (generally in cases arising under the Federal Arbitration Act, which does not apply here).[2] This is a "doctrine of last resort". <u>Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 389 (2d Cir. 2003). An error of law or failure to understand or apply the law by the arbitrator is not sufficient

---

[2] The Federal Arbitration Act does not apply to cases arising out of labor arbitration awards. See <u>Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812</u>, 242 F.3d 52, 53-56 (2d Cir. 2001).

grounds to decline to enforce an award. The law alleged to have been disregarded must be well-defined, explicit, and clearly applicable to the case, <u>and the arbitrator must have known of the law and refused to apply it or purposely ignored it</u>. See <u>Application of National Association of Broadcast Employees and Technicians v. National Broadcasting Company</u>, 707 F. Supp. 124, 130-31 (S.D.N.Y. 1988), quoting <u>Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker</u>, 808 F.2d 930, 933-34 (2d Cir. 1986). See also <u>D.H. Blair & Co.</u>, <u>supra</u>, 462 F.3d at 111 and <u>Banco de Seguros del Estado v. Mutual Marine Office, Inc.</u>, 344 F. 3d 255, 263 (2d Cir. 2003). A claim of manifest disregard of law is precluded by an arbitrator's even slightly colorable explanation for not following the legal principle.

BIMC does not contend that the Arbitrator disregarded the law. It is only by BIMC's ignoring the 1988-1992 Agreements that pay Kings Highway RNs flex shift pay (3:00 to 7:00 PM), does BIMC claim that the Arbitrator allegedly had no basis for his ruling.

BIMC here argues that the latest Kings Highway flex shift employees should be paid as Petrie Division employees rather than continue to be paid as Kings Highway employees. The Arbitrator considered and rejected that argument after review of all the testimony and documentary evidence.

This Court confirmed the Award in <u>BIMC. v. Teamsters</u> <u>supra</u>, which involved an almost identical Kings Highway case. The Arbitrator held that

security officers hired after the March 15, 1997 Agreement (Tier II officers) at Kings Highway were also entitled to shift differential pay just as Tier I employees were receiving. BIMC had paid the shift differential to Tier II employees since February, 1988. That arbitrator held that Tier II employees were contractually entitled to the flex shift pay and decided that the payment was not made in "error" as BIMC claimed, 2000 U.S. LEXIS 13547 at *12, *13. This Court held the Arbitrator's Award was drawn from the essence of the collective bargaining agreement.

BIMC v. Teamsters Local 814 was decided on September 20, 2000. Ms. Ognibene, Kings Highway Division Labor Relations Manager, was involved in both disputes. The Teamsters Local 814 arbitration award and confirmation by this Court should have alerted BIMC management to reduce to writing any "agreement" to stop providing the four hours of shift differential pay. Their failure to do so indicates there was no such agreement and no "error" in paying new flex shift Kings Highway RNs. The Arbitrator correctly rejected BIMC's ploy and followed the written Agreements in the instant case.

BIMC has tried to unilaterally modify the Kings Highway contracts three times. Three Arbitrators and this Court in Teamsters Local 814 supra, have prevented such attempts.

In Matter of Arbitration between Local 1199 and BIMC (Adelman Opinion and Award, June 2001, Union Exh. F attached to Peek affirmation), years after the merger and BIMC's paying flex time RNs for a half hour lunch break, BIMC unilaterally decided that it was not required under the Kings Highway contracts. Arbitrator Adelman sustained Local 1199's position and held that it was required that BIMC continue to pay the Kings Highway RNs who worked a flex schedule for meal breaks in accordance with the 1988 Kings Highway agreement. Union Exh. F. pp. 5-7).

Subsequent to the Adelman Award, the parties expressly eliminated the Kings Highway meal pay in negotiations but did not discuss the flex shift differential pay. The Adelman Opinion and the parties' changing it in 2001-2002 bargaining estops BIMC from now claiming that the Kings Highway agreements' flex shift pay do not apply and were modified by silence in 2002.

### III.    **CONCLUSION AND REQUESTED RELIEF**

Defendant-Counter-claim Plaintiff respectfully requests that this Court enter a judgment in its favor:

(1)    dismissing the Petition;

(2)    confirming the Arbitrator's Opinion and Award;

14

(3)    ordering BIMC to comply with the Arbitrator's Award immediately;

(4)    ordering BIMC to make whole all affected employees including, but not limited to, payment of the flex shift differential pay required by the Arbitrator's Award plus interest from August 7, 2005;

(5)    ordering BIMC to pay attorney's fees incurred by Defendant/Counterclaim Plaintiff together with the costs and disbursements of this proceeding and such other and further relief as this Court may deem just and proper.

Dated:  August 30, 2007
        New York, New York

                        Respectfully Submitted,

                        _____/s/_____
                        Barry J. Peek (BJP 3268)
                        Jordan Rossen (JR 6176)
                        MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                        1350 Broadway, Suite 501
                        New York, New York  10018
                        212-239-4999

                        Attorneys for Defendant-Counter Claim Plaintiff
                        1199/S.E.I.U. United Healthcare Workers East
                        d/b/a Local 1199/S.E.I.U. National Health and
                        Human Service Employees Union

87956

LEXSEE 2000 US DIST LEXIS 13547



Positive
As of: Aug 23, 2007

**BETH ISRAEL MEDICAL CENTER, Petitioner, -v.- LOCAL 814, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Respondent.**

**99 Civ. 9828 (JSM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2000 U.S. Dist. LEXIS 13547; 165 L.R.R.M. 2715**

**September 20, 2000, Decided
September 20, 2000, Filed**

**DISPOSITION:**    [*1] Petition to vacate the arbitration award denied, and the Union's motion for confirmation and enforcement granted.

**COUNSEL:** For Petitioner: Rory J. McEvoy, Littler Mendelson, P.C., New York, New York.

For Respondent: William K. Wolf, Abigail R. Levy, Friedman & Levine, New York, New York.

**JUDGES:** JOHN S. MARTIN, JR., U.S.D.J.

**OPINION BY:** JOHN S. MARTIN, JR.

**OPINION**

**MEMORANDUM OPINION AND ORDER**

JOHN S. MARTIN, Jr., District Judge:

Petitioner Beth Israel Medical Center ("Beth Israel") brings this petition seeking to vacate an arbitration award. Respondent Local 814, International Brotherhood of Teamsters (the "Union") opposes the petition and moves for confirmation and enforcement of the award. For the reasons set forth below, Beth Israel's petition to vacate is

denied, and the Union's motion for confirmation and enforcement is granted.

**FACTS**

The Union represents, for collective bargaining purposes, the security officers employed by Beth Israel within New York City. In connection with this representation, the Union has been a party to collective bargaining agreements with Beth Israel. The most recent collective bargaining agreement (the "CBA") covers the period from March 15, 1997 to [*2] March 14, 2000. *See* Declaration of William K. Wolf in Support of Defendant/Respondent's Motion to Confirm and Enforce the Arbitration Award ("Wolf Decl.") Ex. C at 1, 30. Article II(D) of the CBA states: "Employees working during a shift which begins before 6:00 AM or ends after 7:00 PM shall receive a pay differential of 10 percent (10%) of their base pay." *Id.* at 5. The CBA also provides for the arbitration of grievances. *See id.* at 18-20.

Under the prior collective bargaining agreements, the Union had not represented the security officers employed at Beth Israel's Kings Highway, Phillips Ambulatory Care Center ("PACC"), and Beth Israel North ("BI North") divisions because these divisions had previously been staffed by outside security firms before they were acquired by Beth Israel. During the negotiations of the

Page 2

2000 U.S. Dist. LEXIS 13547, *2; 165 L.R.R.M. 2715

CBA, the parties agreed to include in the Union's bargaining unit the security officers employed at the Kings Highway, PACC, and BI North divisions. This agreement was embodied in the Memorandum of Agreement (the "MOA"), *see* Wolf Decl. Ex. D, and subsequently incorporated into the CBA under Article XXXII, *see* Wolf Decl. Ex. C.

Pursuant to the MOA, the [*3] parties created a new security officer title for officers hired after March 15, 1997 at the Kings Highway, PACC, and BI North divisions. *See* Wolf Decl. Ex. D. The parties have since referred to the officers hired under this title as "Tier II" officers, while the incumbent security officers at these divisions are referred to as "Tier I" officers. The MOA sets forth terms and conditions of the Tier II officers' employment, but it does not mention the night shift differential. At its conclusion, the MOA provides that its section on the new security officer title "covers the wages and benefits that apply to this title at the BI North, [PACC], and the Kings Highway Division sites" and that "all other management and union proposals, if any, are withdrawn upon execution of this agreement." *Id.* at 3.

After the CBA became effective, a dispute arose between the parties as to whether the night shift differential, as set forth in Article II(D) of the CBA, should apply to Tier II officers. [1] In early 1998, the Union filed a grievance demanding night shift differential pay for Tier II employees who worked shifts implicating the night shift differential provision. In June 1998, after [*4] Beth Israel denied the grievance, the Union filed a demand for arbitration. The parties jointly selected an arbitrator to decide the breadth of the night shift differential clause and stipulated that the issue to be determined was: "Has [Beth Israel] violated the collective bargaining agreement by not paying a night shift differential to Second Tier officers? If so, what shall be the remedy?"

    1 It is undisputed that Tier I officers are entitled to receive the night shift differential.

Before the arbitration occurred, in September 1998 a Union representative notified Marisa Ognibene ("Ognibene"), the labor relations manager for the Kings Highway division, that neither Tier I nor Tier II security officers at Kings Highway were receiving night shift differential. The Union representative asked Ognibene (1) to pay all security officers (including Tier II officers) at Kings Highway night shift differential prospectively and

(2) to pay the differential retroactively to all officers for the twenty-month period beginning [*5] in March 1997 through September 1998. According to Beth Israel, at this time, Ognibene was unaware of the Union's grievance and pending demand for arbitration.

Beth Israel asserts that after Ognibene verified that Tier I officers were not receiving night shift differential at the Kings Highway division, she instructed the payroll department to begin paying the differential to Tier I officers. Beth Israel also asserts that to confirm these instructions, on October 5, 1998, Ognibene sent her supervisor an email seeking guidance and approval to begin paying night shift differential to Tier I officers. According to the hospital, Ognibene's supervisor responded later that day that Ognibene should pay the differential, as it was in the contract.

Beth Israel asserts that despite Ognibene's instructions, the payroll department at Kings Highway began to pay night shift differential to both Tier I and Tier II officers prospectively and paid the differential to both Tier I and Tier II officers retroactively. Allegedly, neither Ognibene nor Beth Israel discovered this error until January 27, 1999, at the first arbitration hearing.

The arbitration hearings were held on January 27 and March 4, 1999. On [*6] May 29, the arbitrator ruled that Beth Israel had violated the CBA by not paying a night shift differential to Tier II officers and that Article II of the CBA was applicable to Tier II officers retroactive to February 4, 1999. In response to this arbitral decision, Beth Israel commenced an action in state court against the Union by filing a petition to vacate the award. The Union removed the action to this court and then filed an answer and counterclaim seeking confirmation and enforcement of the award.

## DISCUSSION

### I. Judicial Review of an Arbitration Award

An arbitrator's award is entitled to great deference by a reviewing court. *See Hill v. Staten Island Zoological Soc'y, Inc.*, 147 F.3d 209, 212 (2d Cir. 1998) (collecting cases). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). Therefore, the standard for avoiding summary

Case 1:07-cv-06254-MGC    Document 8    Filed 08/30/2007    Page 23 of 25

Page 3

2000 U.S. Dist. LEXIS 13547, *6; 165 L.R.R.M. 2715

confirmation of an arbitration award is high, and the burden of proof is on the party moving [*7] to vacate the award. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

A federal court may set aside an arbitral decision only in very unusual circumstances. *See Bendel Feed & Flour Mill, Ltd. v. Seaboard Corp.*, 2000 U.S. Dist. LEXIS 10598, No. 99 Civ. 4054, 2000 WL 1051870, at *2 (S.D.N.Y. July 28, 2000). A district court may vacate an arbitral decision upon the statutory grounds specified in 9 U.S.C. § 10 of the Federal Arbitration Act (the "FAA"). *See Acciardo v. Millennium Secs. Corp.*, 83 F. Supp. 2d 413, 417 (S.D.N.Y. 2000). Under 9 U.S.C. § 10(a)(4), an award may be vacated "where the arbitrators exceeded their powers." In addition to the statutory grounds for vacatur, a court may vacate an arbitral award where the arbitrator acts in manifest disregard of the law or the evidence, *see Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202, 204 (2d Cir. 1998), or where an award under a collective bargaining agreement is contrary to public policy, *see Newsday, Inc. v. Long Island Typographical Union, No. 915*, 915 F.2d 840, 844 (2d Cir. 1990); [*8] *see also Brookdale Hosp. Med. Ctr. v. Local 1199, Nat'l Health & Human Serv. Employees Union*, 107 F. Supp. 2d 283, 289 (S.D.N.Y. 2000).

## II. The Arbitrator Did Not Exceed His Power

In determining whether an arbitrator has exceeded his power under Section 10(a)(4), the reviewing court must determine first whether the arbitrator acted within the scope of his authority, and second whether the award draws its essence from the agreement or is merely an example of the arbitrator's own brand of justice. *See Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992). Under this standard, "an arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.'" *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 31 (2d Cir. 1997) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

### A. *The Arbitrator Acted Within the Scope of His Authority*

The "scope of authority of arbitrators generally depends on the intention of the parties to an arbitration,

and is determined [*9] by the agreement or submission." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) (quoting 6 C.J.S. Arbitration § 69, at 280-81 (1975)); *see Hill*, 147 F.3d at 214. In this case, the parties stipulated that the issue to be determined by the arbitrator was: "Has the Employer violated the collective bargaining agreement by not paying a night shift differential to Second Tier officers? If so, what shall be the remedy?" Wolf Decl. Ex. A at 1. This submission reflects the parties' unambiguous intent to submit to, and be bound by, the arbitrator's decision regarding whether Beth Israel violated the CBA by not paying the differential. *See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Hollywood Heating & Cooling, Inc.*, 88 F. Supp. 2d 246, 252 (S.D.N.Y. 2000). Clearly, then, the arbitrator was acting within the scope of the authority conferred upon him by the parties' submission in determining that Beth Israel violated the CBA. *See id.*

Beth Israel argues that the arbitrator exceeded his authority by finding that an extra-contractual agreement required Beth Israel to pay night shift differential to all Tier II officers. [*10] Beth Israel contends that the arbitrator resolved the submitted question in its favor by ruling that Beth Israel had no obligation to pay the differential to Tier II officers under the CBA, but then he imposed a new term upon the parties to which they had never agreed. However, the arbitrator did not rule that Beth Israel had no such obligations under the CBA. Instead, he concluded that the parties had reached an agreement in connection with settlement of the dispute at Kings Highway, which modified the CBA, and that this modified agreement required Beth Israel to pay night shift differential to certain Tier II officers. *See* Wolf Decl. Ex. A at 6. Thus, the arbitrator acted within the scope of his authority by interpreting the CBA, as modified by the parties.

Beth Israel cites *Leed Architectural Products, Inc. v. United Steelworkers of America, Local 6674* in support of its argument that the award should be vacated because the arbitrator altered the agreement between the parties. *See* 916 F.2d 63 (2d Cir. 1990). However, *Leed* is distinguishable because in *Leed* the arbitrator altered the contract, while here the arbitrator found that the parties themselves [*11] modified the agreement.

### B. *The Arbitrator's Award Draws Its Essence from the Agreement*

An arbitral decision should not be vacated where it

Case 1:07-cv-06254-MGC    Document 8    Filed 08/30/2007    Page 24 of 25

Page 4

2000 U.S. Dist. LEXIS 13547, *11; 165 L.R.R.M. 2715

draws its essence from the agreement, even if it contains factual errors or erroneous interpretations of contract provisions. *See First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118 F.3d 892, 896 (2d Cir. 1997). In order to satisfy the requirement that the award "draws its essence" from the agreement, the arbitrator must only explain his reasoning under the contract in terms that offer even a barely colorable justification of the outcome reached. *See Hollywood Heating*, 88 F. Supp. 2d at 252.

While "an arbitrator is confined to interpretation and application of the collective bargaining agreement[,] . . . he may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960); *see Local 1199*, 956 F.2d at 25. [*12] In making such a determination, the arbitrator may consider the intent of the parties as revealed through their conduct, bargaining history, past practices, rights established under earlier agreements, and other rudimentary sources of contract construction. *See Radio & Television Broadcast Eng'rs Union, Local 1212 v. WPIX, Inc.*, 716 F. Supp. 777, 781-82 (S.D.N.Y.), *aff'd*, 895 F.2d 1411 (2d Cir. 1989) (citing *Western Elec. Co. v. Communications Workers of America*, 450 F. Supp. 876, 882 (E.D.N.Y.), *aff'd*, 591 F.2d 1333 (2d Cir. 1978)). More specifically, the arbitrator may discern whether the "parties [have] modified their contractual obligations by an agreement reasonably to be understood from their conduct." 716 F. Supp. at 782 (quoting *Fox v. Merrill Lynch & Co.*, 453 F. Supp. 561, 564 (S.D.N.Y. 1978)).

In the present case, the arbitrator accorded great weight to the fact that Tier II officers at Kings Highway had been paid the night shift differential since February 1999. While Beth Israel claimed that it was the result of a payroll error, the arbitrator was not persuaded by this argument. Instead, [*13] he concluded that the payment of the night shift differential to certain Tier II officers was part of a grievance settlement negotiated in February 1999 between the Union's representative and Ognibene. The conduct of the Union's representative and Ognibene indicates that the parties had mutually modified the CBA when negotiating the settlement of the earlier grievance. *See* 716 F. Supp. at 781-82. This conduct, properly considered by the arbitrator, reveals Beth Israel's intent to pay the night shift differential to certain Tier II officers.

Then, guided by the well-settled arbitral rule that employees similarly situated are to be treated similarly absent some express contractual or otherwise binding agreement enunciating the difference in employment status, the arbitrator determined that all of the Tier II officers are entitled to the night shift differential retroactive to February 4, 1999. Thus, regardless of any factual errors or erroneous interpretations of the contractual provisions, the arbitrator's award was drawn from the essence of the CBA, as modified by the parties.

Citing cases in which courts have vacated an arbitrator's award because the award modified or changed the parties' [*14] agreement, Beth Israel argues that the arbitrator "based his award on some body of thought, or feeling, or policy, or law that is outside the contract." Pl.'s Mem. Supp. Pet. to Vacate at 15 (quoting *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988)). However, while an arbitrator's award may be vacated if it modifies the agreement, it is also possible that the award highlights a change in the agreement that has been negotiated by the parties. *See WPIX*, 716 F. Supp. at 782. Here, according to the arbitrator, certain Tier II officers began to receive the night shift differential in February 1999 as part of a settlement reached by Beth Israel and the Union concerning an earlier grievance. The arbitrator determined that this settlement altered the terms of the CBA. In the arbitrator's view, the conduct of the parties in reaching the settlement modified the CBA so as to provide certain Tier II officers with the night shift differential. Thus, the arbitrator's award is not based on a body of thought, feeling, policy or law outside the agreement, but it is based on the conduct of the parties. *See id.*

The decisions that Beth Israel cites [*15] on this issue are inapposite because in this case the arbitrator did not unilaterally modify the CBA, while in those cases the arbitrator unilaterally modified the agreements. Here, the arbitral award is based upon a modification of the CBA as evidenced by the parties' conduct. The award is not founded upon the arbitrator's personal views or values--he neither imposed his own notions of equity, *see In re Marine Pollution Serv., Inc.*, 857 F.2d at 95, nor made an irrational inference or assumption, *see Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*, 1991 U.S. Dist. LEXIS 21747, No. Civ-88-1165E, 1991 WL 46487, at *3 (W.D.N.Y. Mar. 25, 1991), *aff'd*, 950 F.2d 95 (2d Cir. 1991); *City of New York v. Davis*, 146 A.D.2d 480, 536 N.Y.S.2d 757, 759

Page 5

2000 U.S. Dist. LEXIS 13547, *15; 165 L.R.R.M. 2715

(App. Div. 1989).

Because the arbitrator acted within the scope of his authority and his award drew from the essence of the agreement, he did not exceed his powers under 9 U.S.C. § 10(a)(4).

### III. The Arbitrator Did Not Manifestly Disregard the Facts

Review of an arbitration award on the basis of manifest disregard of the facts is "severely limited." *Halligan*, 148 F.3d at 202; [*16] *see Greenberg v. Bear Stearns & Co.*, 1999 U.S. Dist. LEXIS 12991, No. 99 Civ. 358, 1999 WL 642859, at *1 (S.D.N.Y. Aug. 23, 1999), *aff'd*, 220 F.3d 22 (2d Cir. 2000). While judicial review of an arbitrator's factual determinations is quite limited, a court may modify or vacate an arbitrator's award for manifest disregard of the law or the evidence if there is "strong evidence" contrary to the findings of the arbitrator and the arbitrator has not provided an explanation of his decision. *See Halligan*, 148 F.3d at 204; *see also Daily News, L.P. v. Newspaper & Mail Deliverers' Union of New York and Vicinity*, 1999 U.S. Dist. LEXIS 19024, No. 99 Civ. 5165, 1999 WL 1095613, at *7 (S.D.N.Y. Dec. 2, 1999); *Greenberg*, 1999 WL 642859, at *1. However, the court may not re-weigh the evidence or question the credibility findings of the arbitrator. *See Campbell v. Cantor Fitzgerald & Co.*, 21 F. Supp. 2d 341, 349 (S.D.N.Y. 1998), *aff'd*, 205 F.3d 1321 (2d Cir. 1999).

Beth Israel contends that various factual errors made by the arbitrator constituted a manifest disregard of the evidence. While the arbitrator did make factual errors, [2] as [*17] the Union admits, he correctly found that Beth Israel had paid the night shift differential to certain Tier II officers since February 1999. From this finding, the arbitrator inferred that the payment of these Tier II officers was not a mistake. Because this inference is reasonable and the finding upon which it is based is undisputed, the arbitrator presents a "colorable justification for the outcome reached." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). Thus, the arbitrator did not act in manifest disregard of the evidence.

2    For example, the arbitrator stated that there were eight Tier II security officers at Kings Highway, while there were only seven. In addition, he mistakenly found that the Tier II security officers at Kings Highway only received

the differential prospectively, although they also received it retroactively.

In its attempt to satisfy its burden of proving the arbitrator's manifest disregard of the facts, Beth Israel relies [*18] upon *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998). Such reliance is misplaced. In *Halligan*, the Second Circuit vacated the arbitrator's award because the award did not contain any explanation or rationale for the result and there was "strong evidence" that contravened the arbitrator's position. *See id.* at 204. In the present case, the arbitrator, after considering all of the evidence put before him, provided sufficient explanations for his factual determinations and made a reasonable inference based upon an undisputed finding. As the arbitrator presented more than a "barely colorable justification for the outcome reached," Beth Israel's argument on this issue fails.

### IV. The CBA Is Not Contrary to Public Policy

Although a court may refuse to enforce an arbitrator's award under a collective bargaining agreement if the award is contrary to public policy, *see Newsday, Inc. v. Long Island Typographical Union, No. 915*, 915 F.2d 840, 844 (2d Cir. 1990); *see also Brookdale Hosp. Med. Ctr. v. Local 1199, Nat'l Health & Human Serv. Employees Union*, 107 F. Supp. 2d 283, 289 (S.D.N.Y. 2000), the [*19] Statute of Frauds is not applicable to collective bargaining agreements, *see American Fed'n of Television & Radio Artists v. Inner City Broad. Corp.*, 748 F.2d 884, 887 (2d Cir. 1984); *see also Mack Trucks, Inc. v. International Union, United Auto., Aerospace & Agric. Implement Workers of America*, 856 F.2d 579, 592 (3d Cir. 1988). Thus, the parties' modification of the CBA is not contrary to public policy and is not grounds for vacatur of the award.

### CONCLUSION

For the foregoing reasons, the petition to vacate the arbitration award is denied, and the Union's motion for confirmation and enforcement is granted.

### SO ORDERED.

Dated: New York, New York

September 20, 2000

JOHN S. MARTIN, JR., U.S.D.J.