Barry J. Peek (BJP 3268)
Jordan Rossen (JR 6176)
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 Broadway, Suite 501
New York, New York  10018
212-239-4999

Attorneys for the Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BETH ISRAEL MEDICAL CENTER,

       Plaintiff,                            07 CV 6254 (MGC)
                                            ECF Case

       v.

1199/S.E.I.U. UNITED HEALTHCARE WORKERS
EAST D/B/A LOCAL 1199/S.E.I.U. NATIONAL
HEALTH AND HUMAN SERVICE EMPLOYEES
UNION

       Defendant-Counter Claim Plaintiff.
-------------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
UNION'S RULE 12(c) MOTION FOR JUDGMENT
CONFIRMING ARBITRATION AWARD AND DISMISSING
<u>EMPLOYER'S PETITION TO VACATE AWARD</u>**

# TABLE OF CONTENTS

**Page(s)**

*TABLE OF AUTHORITIES* ..............................................................*ii, iii*

I.  *FURTHER STATEMENT OF FACTS AND PROCEEDINGS*................*1-4*

II.  *ARGUMENT*

   *THE ARBITRATOR DID NOT EXCEED HIS POWER OR GO
   OUTSIDE THE AGREEMENTS.  THE 2001-2002 AGREEMENTS
   DID NOT MODIFY THE KINGS HIGHWAY CONTRACTS
   AS TO SHIFT DIFFERENTIAL PAY FOR ADDED FLEX
   SHIFT EMPLOYEES* ...................................................................*4-11*

III.  *CONCLUSION AND REQUESTED RELIEF*................................. *11.12*

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Application to Vacate an Arbitration Award by New York Hotel and Motel Traders Council, AFL-CIO v. Hotel Assoc. of New York, City, Inc.,*
___F. Supp. ___, 1993 U.S. Dist. LEXIS 16615
(S.D.N.Y. 1993) ................................................................................................7

*Arbitration Between Local 1199 and BIMC, June 2001 "Adelman Award"*
(Union Exhibit F) ....................................................................................... 1, 3, 9

*Beth Israel Medical Center v. Local 814, IBT,*
___F.Supp.2d ___, 2000 U.S. Dist. LEXIS 13547
(S.D.N.Y. 2000) ............................................................................................ 5, 7

*Conzo v. City of New York,*
438 F. Supp. 2d 432 (S.D.N.Y. 2006) ...............................................................5

*F. & M. Schaefer Brewing Co., v. Local 49, Brewery Workers,*
420 F.2d 854 (2d Cir. 1970) .............................................................................8

*Fromm v. Ing Funds Distributors, LLC,*
486 F. Supp. 2d 348, (S.D.N.Y. 2007) ..............................................................4

*Giles, et al v. City of New York,*
41 F.Supp. 2d 308 (S.D.N.Y. 1999) .............................................................. 8, 9

*Harry Hoffman Printing, Inc., v. Graphic Communications Intl. Union, Local 261,*
950 F.2d 95 (2d Cir. 1991) ............................................................................ 7, 8

*Hill v. Staten Island Zoo.,*
147 F.3d 209 (2d Cir. 1998) .............................................................................5

*Humble Oil and Refining Co., v. Local 866, Teamsters,*
447 F.2d 229 (2d Cir. 1971) .............................................................................9

*Hygrade Operators, Inc. v. Local 333, United Marine Divn.,*
945 F.2d 18 (2d Cir. 1991) ...............................................................................5

*Leed Architectural Products, Inc., v. United Steel Workers, Local 6674,*
  916 F.2d 63 (2d Cir. 1990) ................................................................... 6, 7

*Medo Photo Supply Co., v. Livingston,*
  274 F. Supp. 209 (S.D.N.Y. 1967) ...................................................... 9, 10

*National Cleaning Contractors, Inc., v. Local 32B-32J, et al,*
  833 F. Supp. 420 (S.D.N.Y. 1993) ...................................................... 4, 5, 8

*Techcapital Corp. v. Amoco Corp.,*
  ___F.Supp.2d ___, 2001 U.S. Dist. LEXIS 2822
  (S.D.N.Y. 2001) ........................................................................................ 8

*Torrington Company v. Metal Products Workers Union, Local 1645, UAW,*
  362 F.2d 677 (2d Cir. 1966) ..................................................................... 9

*Union Appointed Trustees of the Tapers Industry Insurance and Annuity*
  *Funds v. Employer Appointed Trustees,*
  714 F. Supp. 104 2000 (S.D.N.Y. 1989) .................................................... 9

*United Paperworkers Int'l Union v. Misco, Inc.,*
  484 U.S. 29 (1987) .................................................................................... 5

**TEXTS**

  *Elkouri & Elkouri, How Arbitration Works (6th Ed. 2003)* ............................... 10

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
UNION'S RULE 12(c) MOTION FOR JUDGMENT
CONFIRMING ARBITRATION AWARD AND
<u>DISMISSING EMPLOYER'S PETITION TO VACATE AWARD</u>**

I.     <u>**FURTHER STATEMENT OF FACTS AND PROCEEDINGS**</u>

Plaintiff Beth Israel Medical Center ("Petitioner" or "BIMC") and Local 1199 are currently bound by several contracts, including those reached in 1988-1992 (by Kings Highway Hospital), 2001 and 2002 (Petition Exhibit 8, Arbitration Opinion and Award, at pp. 14, 15, 17; Union Exhibit F, at 1-7).

Those Contracts "remain in full force and effect unless expressly modified. . . . "[1] by later agreements (Petition Exhibits 1, paragraph 1); Exh. 2, para. 1) Exh. 8, and Union Exh. F).

It is undisputed that these 1988-2002 contracts were before the Arbitrator. The 1988-2002 written agreements were stressed in the Union's post hearing Memorandum to the Arbitrator (Union Exh. B, pp. 2-15), in BIMC's two briefs (Union Exh. C, p. 5 and Exh. D, p. 1) and the Union's Reply (Union Exh. E, pp. 1, 2). The Arbitrator decided to what extent the Kings Highway flex shift provisions were modified by the 2001-2002 agreements (Exhibit 8 to Petition, pp. 3-10, 12-15, 17, parts of which are quoted in the Union's initial Memorandum, pp. 7-9).

---

[1] This clause is quoted from a March, 2007 agreement and is substantially identical to clauses in earlier agreements see e.g. Petition, Exhibits 1, 2 and 3.

The Petrie Division contracts were also before the Arbitrator (see, e.g. Petition, Exh. 8, pp. 5, 11).

It is undisputed that the 2001 and 2002 contracts were supplemental agreements and not a replacement for the earlier agreements which provided shift differential pay to Kings Highway flex shift employees including those who worked from 3:00 to 7:00 PM. (Union Exhs. B-D, supra).

The February 21, 2002 agreement slightly changed the Kings Highway flex shift hours for added employees and expressly stopped paying the added flex shift employees for lunch time (Pet. Exh. 7, p. 5). It did not mention the Kings Highway flex shift 3:00 PM to 7:00 PM differential pay, which had existed since 1989 with only a change from 10% to pro rata (ibid).

The 2002 contract did not state that the added flex shift employees would be paid less than other Kings Highway flex shift employees (ibid). Nor did BIMC advise the Union of any such change or modification of pay for Kings Highway flex shift employees despite agreeing to consensus bargaining (Petition Exh. 6).

The added flex shift employees at Kings Highway were paid as other Kings Highway flex shift employees from 2002 to 2005, when BIMC unilaterally took away their shift differential pay claiming the payments were in error (Petition Exh. 9). That letter refers to the added Kings Highway employees as on twelve-hour schedules. Paragraph 1 of Ms. Suardy's letter also stated that the nurses who

2

worked <u>twelve-hour shifts</u> were overpaid, with no reference to only added flex shift employees (<u>ibid</u>, but see Ms. Suardy's October 3, 2007 Declaration).

In June, 2001, Arbitrator Adelman ruled against BIMC's attempt to unilaterally cease the half hour lunch pay, which Kings Highway flex shift employees had received since 1988 (Union Exh. F).

On March 29, 2007, BIMC and the Union agreed to add more Kings Highway flex shift employees and expressly stated in part 8.d):

> d) Flex Model for these units – 11.5 hr Shift
> For these units, described above, this flex model, will require each full time nurse is required to work thirteen (13) 11.5 hour shifts in a 4 week period. <u>Only RNs whose permanent daily schedules end past 7pm. shall be entitled to the evening shift differential beginning from the evening shift start time of 3:00 pm.</u> There is a ½ hour unpaid meal break and 3x 15 paid minute breaks per shift, RNs may combine the ½ hour meal break with 2x 15 minute breaks to create an hour meal break. RNs will be paid for hours worked. (Emphasis added.)

This was the first agreement since 1989, which reduced such shift differential pay at Kings Highway. The March, 2007 agreement is described in an October 3, 2007 declaration by C. Suardy. Paragraph 2 of that declaration states that since 1988, all Kings Highway flex shift employees received extra pay for hours worked after 3:00 PM (the "MOA Model")

Paragraph 3 of the Declaration misleadingly states that the 2002 Agreement adopts the "Petrie Flex-time Model" for Kings Highway employees, when the

3

Petrie Division is not mentioned in the Agreement. The Arbitrator noted in part "the employer acknowledges that the summary of agreements does not specifically refer to the Petrie model . . . " (Pet. Exh. 8, p. 11).

II.    **ARGUMENT**

**THE ARBITRATOR DID NOT EXCEED HIS POWER OR GO OUTSIDE THE AGREEMENTS. THE 2001-2002 AGREEMENTS DID NOT MODIFY THE KINGS HIGHWAY CONTRACTS AS TO SHIFT DIFFERENTIAL PAY FOR FLEX SHIFT EMPLOYEES**

BIMC wants to now re-litigate the merits of the dispute, which it lost before the Arbitrator. It argues that the Union's position (and arbitration ruling) that all Kings Highway flex shift employees should continue to receive shift differential pay after 2002 "lacks merit" and is "illogical" (pp. 14, 18, note 7 of BIMC Memorandum). BIMC instead still argues that pay for the added flex shift Kings Highway employees should be what Petrie Division employees receive (ibid). Even if BIMC's position were reasonable (and it is not), the Arbitrator rejected BIMC's argument and upheld the written Kings Highway's differential pay rates.

As this Court and others have held, when an arbitrator even arguably relies on the contract, the award should be confirmed (Union Memorandum, pp. 5-7, 9, 13, 14). See, for example: Fromm v. Ing. Funds Distributors, LLC, 486 F.Supp.2d 348, 350 (S.D.N.Y. 2007); National Cleaning Contractors, Inc., v. Local 32B-32J,

4

et al, 833 F. Supp. 420, 423 (S.D.N.Y. 1993); United Paperworks Intl. Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987); Beth Israel Medical Center v. Local 814, IBT, ___F. Supp.2d ___, 2000 U.S. Dist. LEXIS 13547 (S.D.N.Y. 2000), at *11, *12; Hygrade Operators, Inc. v. Local 333, United Marine Divn., 945 F.2d 18, 22 (2d Cir. 1991); and Hill v. Staten Island Zoo., 147 F.3d 209, 213 (2d Cir. 1998).

BIMC often falsely charges the Arbitrator with relying on "other" sources. He relied on Kings Highway agreements, which covered the added flex time employees unless modified by the February 2002 agreement (Pet. Exh. 7). That 2002 contract did not mention shift differential pay when it made a slight change to hours and abolished lunch pay for the added employees (ibid).

As this Court said in part in Conzo v. City of New York, 438 F.Supp.2d 432 (S.D.N.Y. 2006):

> In a situation "where an agreement involves repeated occasions for performance . . . any course of performance accepted or acquiesed in without objection is given great weight in the interpretation of the agreement" (citation omitted, at 436)

This would apply to the 1989-2005 payment of differential pay to Kings Highway flex shift employees, including those added in 2002 who were paid into 2005.

This Court added:

> By including Section 9 of the CBA, the parties demonstrated their ability to explicitly denote exclusivity . . . (at 437).

5

By showing that the parties can expressly contract over shift pay in March, 2007 for added Kings Highway flex shift employees, plus lunch and hours, the parties showed their ability to do in 2007 what they did not agree to do in 2002.

Beth Israel's cases do not apply because the Arbitrator relied upon written agreements for Kings Highway employees. BIMC falsely claims the Arbitrator relied on nothing when he correctly held that the Kings Highway contracts' shift pay was not changed by the February 2002 contract. (Petition Exh. 7).

Instead of relying on the Petrie pay provision, the Arbitrator correctly held that the Kings Highway pay for flex time employees had not been modified as to those who worked 3:00 AM to 7:00 PM, including the added flex time employees. That is reliance on written contracts for Kings Highway flex shift employees from 1989 to 2005.

BIMC cites <u>Leed Architectural Products, Inc., v. United Steel Workers, Local 6674</u>, 916 F.2d 63 (2d Cir. 1990) more than any other case. In <u>Leed</u>, the employer (unlawfully under the National Labor Relations Act) unilaterally paid a new employee <u>above</u> the contract rate. The USW grieved and the arbitrator ruled that the employer must pay other employees in the same class the higher rate. The employer had paid the higher rate of $10 per hour to an employee who moved from New York to Connecticut (at 64). The Court of Appeals reversed the Connecticut District Court and vacated the arbitration award because it was not based on the

6

contract's negotiated rate and Leed's unilateral raise violated the NLRA (at 65, 66). The Court stated that two wrongs do not make a right.

In our case, the Arbitrator held that added Kings Highway flex shift employees rates of pay would be the same as other flex shift employees in the BIMC – Local 1199 contract for Kings Highway employees and set aside BIMC's unilateral attempt to change such rates. Thus, the award here is the opposite of the Leed award.

As this Court said: "[I]n Leed the arbitrator altered the contract . . . " Beth Israel v. Local 814, IBT, __F. Supp. 2d __, 2000 U.S. Dist LEXIS 13547 (S.D.N.Y. 2000) at *10. Here, the Arbitrator held that the applicable contracts governed instead of taking the pay rate from a contract for Petrie Division employees. It was not against public policy for the Arbitrator to apply the only written contract, which provided the pay rates and under which the added (and prior) Kings Highway employees had worked.

See also Application to Vacate an Arbitration Award by New York Hotel and Motel Traders Council, AFL-CIO v. Hotel Assoc. of New York City, Inc., ___ F. Supp. ___, 1993 U.S. Dist. LEXIS 16615 (S.D.N.Y. 1993), at *27, *28, distinguishing Leed and Harry Hoffman Printing, Inc., v. Graphic Communications Intl. Union, Local 261, 950 F.2d 95 (2d Cir. 1991), for affirmatively contravening the contract's express wage rates (Leed) and for not

relying "upon any contractual provision" (Hoffman). The Court, in Hoffman, would uphold the Arbitrator in our case for relying upon the King's Highway contracts (950 F.2d at 98).

Unlike National Cleaning, supra, 833 F. Supp. at 423 and Techcapital Corp. v. Amoco Corp., ___ F. Supp. 2d ___, 2001 U.S. Dist. LEXIS 2822 (S.D.N.Y. 2001), at *48, the separate Kings Highway and Petrie contracts were given to the Arbitrator (BIMC brief, p. 9 and supra, p. 1).

In Techcapital supra, this Court held that contracts were before the Panel, that both parties' positions were plausible interpretations, and that Amoco did not prove that the Panel was not even arguably construing or applying the contracts (at *20-*27). "All that Amoco has demonstrated is that it disagrees with the Panel's interpretation. Whether Amoco, or the Court, agrees with the Panel is irrelevant." (at *25).

Compare F.&M. Schaefer Brewing Co., v. Local 49, Brewery Workers, 420 F.2d 854, 855-56 (2d Cir. 1970), where the Court said in part: "The Union's grievance here is a dispute about 'application' of the agreement's pay rates to 'new' work. Accordingly, it falls squarely within the terms of the arbitration provisions."

BIMC cites Giles, et al v. City of New York, 41 F. Supp. 2d 308 (S.D.N.Y. 1999) to argue that Local 1199 cannot rely upon the Adelman lunch pay award.

8

(Union Exh. F). This Court correctly said that "Issue preclusion based on a prior arbitration is permissible, but not mandatory" (at 313). However, this Court in Giles did not give the prior Arbitration a preclusive effect because the union and the plaintiffs had conflicting positions and the union was the only party to the arbitration (at 315). Here, there is no such conflict of interest.

The 2001 Adelman award stopped BIMC from unilaterally taking lunch money from Kings Highway flex shift employees (Union Exh. F). It illustrates the viability of the 1989-1992 contracts. It also makes it even less credible that BIMC did not notice that the Kings Highway added flex shift employees were correctly being paid as other Kings Highway flex shift employees from 2002-2005.

In Torrington Company v. Metal Products Workers Union, Local 1645, UAW, 362 F.2d 677, 679-682 (2d Cir. 1966), the arbitrator relied on a twenty year non-contractual practice, which the employer had ended, to reinstate employees' receipt of pay for election day. See: Humble Oil and Refining Co., v. Local 866, Teamsters, 447 F.2d 229,233 (2d Cir. 1971) and Medo Photo Supply Co., v. Livingston, 274 F. Supp. 209, 216 (S.D.N.Y. 1967), which distinguish Torrington.

In Union Appointed Trustees of the Tapers Industry Insurance and Annuity Funds v. Employer Appointed Trustees, 714 F. Supp. 104, 106 (S.D.N.Y. 1989), the arbitrator did not even arguably rely on a contract but instead relied only upon judges' opinions in prior cases.

In <u>Medo Photo Supply Co</u>., <u>supra</u>, this Court confirmed the arbitration award and concluded in part:

> What was then left for the arbitrator in this case was to settle a dispute as to whether the increase provided for in the agreement applied to the five year employees in addition to the retroactive adjustment of their minimum wage.
>
> . . . It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his (citation omitted, 274 F. Supp. at 215, 216).

The bargaining history offered by BIMC that led to the execution of the 2002 MOA could not change the 1988-1992 written pay provisions. Such evidence is precluded by the parol evidence rule, which provides that evidence of oral statements, or even oral agreements, may not modify the unambiguous terms of a written agreement. As stated by Elkouri and Elkouri:

> Under the parol evidence rule, a written agreement may not be changed or modified by any oral statements or arguments made by the parties in connection with the negotiation of the agreement. A written contract consummating previous oral and written negotiations is deemed, under the rule, to embrace the entire agreement, and, if the writing is clear and unambiguous, oral testimony will not be allowed to vary the contract. This is said to be a rule of substantive law which when applicable defines the limits of a contract. <u>Elkouri & Elkouri, How Arbitration Works</u> (6th ed. 2003) (footnotes omitted, at 369, 370).

10

Based on the language contained in the relevant MOA's, the Registered Nurses who worked the 7:00 AM to 7:00 PM flex shift at the Kings Highway location were and continued to be entitled to a <u>pro-rata</u> portion of the shift differential. BIMC's constant reference to the Interest Based Negotiations that took place in 2001 is completely misplaced and was correctly rejected by the Arbitrator.

The Union did not violate any agreement as to less confrontational bargaining; BIMC did. By not adding a shift differential pay change to the lunch pay change and then paying shift differential to the added flex shift employees. BIMC either agreed with the Union or it tried to mislead the Union. Less confrontational bargaining does not mean be sneaky. It means be open.

Finally, there is no Statute of Frauds issue because the Arbitrator relied upon written contract provisions as to Kings Highway flex time pay. It is BIMC who attempts to insert a non agreed upon take away into the February, 2002 contract.

### III.  **CONCLUSION AND REQUESTED RELIEF**

Defendant-Counter-claim Plaintiff respectfully requests that this Court enter a judgment in its favor:

  (1) dismissing the Petition;

  (2) confirming the Arbitrator's Opinion and Award;

(3) ordering BIMC to comply with the Arbitrator's Award immediately;

(4) ordering BIMC to make whole all affected employees including, but not limited to, payment of the flex shift differential pay required by the Arbitrator's Award plus interest from August 7, 2005;

(5) ordering BIMC to pay attorney's fees incurred by Defendant/Counterclaim Plaintiff together with the costs and disbursements of this proceeding and such other and further relief as this Court may deem just and proper.

Dated: October 16, 2007
      New York, New York

                              Respectfully Submitted,

                              _____
                              Barry J. Peek (BJP 3268)
                              Jordan Rossen (JR 6176)
                              MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                              1350 Broadway, Suite 501
                              New York, New York  10018
                              212-239-4999

                              Attorneys for Defendant-Counter Claim Plaintiff
                              1199/S.E.I.U. United Healthcare Workers East
                              d/b/a Local 1199/S.E.I.U. National Health and
                              Human Service Employees Union

89564